# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER BREWER, | 1:06cv0435 DLB |
| Plaintiff, | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## BACKGROUND

Plaintiff Roger Brewer ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for supplemental security income and disability insurance benefits pursuant to Title XVI and Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On September 12, 2006, the Honorable Oliver W. Wanger reassigned the case to the undersigned for all purposes.

**FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed his applications for supplemental security income and disability insurance benefits on October 30, 2002.  AR 297, 298-300, 303-312.  He alleged disability since September 30, 2002, due to a herniated disc in his neck, a blind left eye, lumbar sacral vertebrae, hearing problems, possible high blood pressure, migraines, and a left shoulder injury.  AR 304.  After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 279-282, 284-288, 289.  On October 25, 2004, ALJ Jan Donsbach held a hearing.  AR 516-539.  ALJ Donsbach denied benefits on November 19, 2004.  AR 20-32.  The Appeals Council denied review on January 28, 2006.  AR 11-13.

Plaintiff filed a previous application in February 1998.  His claim was denied by an ALJ on April 29, 1999, and the Appeals Council denied review on June 23, 2000.  AR 49-56, 40-42.

Hearing Testimony

ALJ Dascar held a hearing on October 25, 2004, in Glendale, California.  Plaintiff appeared with Diane Wade, a non-attorney representative.  Plaintiff's wife Donna also appeared and testified, along with Vocational Expert ("VE") Jane Hail.  AR 516-517.

Plaintiff testified that he last worked part time cleaning offices and landscaping in June 2003.  AR 519.  He worked about five hours every other week in this position.  AR 520.  He testified that he could not work because of a herniated disc in his back and the resulting pain in his neck, degenerative arthritis in his right hip with pain radiating into his right leg, spine disease, a crack in his left shoulder, nerve damage, and blindness in his left eye.  AR 521.  He also indicated that he takes medication for tremors.  He has pain 24 hours a day and takes his medicines, takes hot showers and elevates his feet to try and relieve the pain.  AR 521-522.  He also uses a heating pad and walks around to help relieve the pain from sitting too long.  AR 522.  He thought he could walk one-half to one block, stand for 20-30 minutes, and sit for about 20-30 minutes.  AR 522-523.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff lives in an apartment with his wife and two dogs. During the day, he watches television, vacuums when they clean the house, and plays video games. AR 523. Once in a while, he'll clean the bathroom, but he cannot clean the bathtub because the scrubbing and bending over are just too much. AR 523. He drives a car to the doctor, grocery and pharmacy, but his wife does most of the driving. AR 524. He doesn't sleep well at night because of the pain. AR 524. Medication that he takes during the day makes him sleepy and he takes about three naps a day. AR 524.

Plaintiff testified that in addition to his back and shoulder problems, he has bad back spasms and depression. AR 525. He is not seeing a psychologist but his treating physician has prescribed medication. AR 525. He also indicated that he has memory problems. AR 525.

When questioned by his representative, Plaintiff testified that he has a pending workers' compensation claim relating to a shoulder injury in 1997. AR 527. On a scale of one to ten, his pain is generally between a five and an eight. He indicated that it reaches an eight about four days of the week and it often causes tremors when it reaches that level. AR 530.

When asked what he does during the day by his representative, Plaintiff indicated that he doesn't do much except take care of their dogs, including feeding them and cleaning up after them, i.e., washing everything down in the back and keeping it clean. AR 532. He doesn't read because he doesn't have the mental stamina. AR 532. He does not listen to the radio or visit friends or family. AR 532. He tries to get out everyday and walk around the apartment complex. AR 532.

Plaintiff explained that he stopped his part time job because after working for two hours, he would collapse and just couldn't do it anymore. He collapsed because his legs were numb, and the pain in his back and neck was bad. He would lay on the ground for 15-20 minutes and then eventually go home. AR 533.

Plaintiff's representative also questioned Plaintiff's wife, Donna. She testified that Plaintiff forgets a lot of things and is moody. AR 534-535. She sees him in pain all day, every day, from the time he gets up to the time he goes to bed. She helps by getting the heating pad

1  and his cane and giving him his medication.  During the day, they clean, watch television and
2  play Pac-man.  AR 535.
3       Jane Hail, the VE, testified that Plaintiff's previous work as a commercial institutional
4  cleaner was heavy, unskilled work with an SVP of 2.  Plaintiff performed it at the medium level.
5  As a landscape laborer, his work was heavy, unskilled work with an SVP of 2.  His work as a
6  groundskeeper was medium, semi-skilled work with an SVP of 3.  AR 537.
7       For the first hypothetical, the ALJ asked the VE to assume a person who could perform
8  light work with no overhead work with the left upper extremity.  This person had vision in one
9  eye.  The VE testified that this person could not perform Plaintiff's past work, but could perform
10 other positions, including burr grinder, floor worker, and bulb filler.  AR 537.
11      For the second hypothetical, the ALJ asked the VE to assume that this person had the
12 additional limitation of no forward reaching with the upper left extremity.  The VE identified the
13 position of surveillance systems monitor, but decided not to consider the position because of the
14 visual requirement.  AR 537-538.
15      For the third hypothetical, the ALJ asked the VE to assume the person in the first
16 hypothetical, with the additional need to take two to three unscheduled breaks to rest, lasting
17 from 10-20 minutes each.  This person could not perform any work.  AR 538.
18      Medical Record
19      On June 28, 2002, Plaintiff began seeing George C. Perdikis, M.D., for his left shoulder
20 pain.  On examination, his cervical range of motion was limited by pain and spasms, but there
21 was no edema, cyanosis, clubbing, joint effusion or significant spasm activity.  Strength in all
22 four extremities was 5/5 and bulk and muscle tone were normal.  Dr. Perdikis opined that the
23 examination was suggestive of left-sided C5-6 radiculopathy with radiation into the left upper
24 extremity, and chronic low back pain and fatigue, which could be secondary to lumbosacral disc
25 disease and/or an underlying neuroendocrine disorder versus rheumatic versus metabolic
26 disorder.  AR 415-416.  Dr. Perdikis prescribed medications and recommended further testing.
27
28

During his follow up appointment with Dr. Perdikis on July 26, 2002, Plaintiff was in a better mood and indicated that the combination of medication was helpful. He rated his pain as 3-4/10. AR 413.

Plaintiff returned to Dr. Perdikis on August 28, 2002, and complained of continuous left shoulder pain and cervical pain. The pain medication was effective, but the medication for spasms was not. AR 412.

On September 17, 2002, Plaintiff underwent x-rays of his cervical spine that revealed minimal degenerative changes with neural foraminal stenosis bilaterally at the C5-6 level, greater on the right side than the left. AR 423. An MRI of his cervical spine showed a 4 mm right paramedian disc protrusion at C5-6 deforming the right cord with mild posterior element hypertrophy and possible mild right cord compression with extension into the right neural foramen resulting in suspect right C6 impingement. AR 426.

He also had x-rays of his left shoulder taken on September 17, 2002, that showed a probable old fracture deformity involving the distal left clavicle. The x-ray was otherwise normal. AR 424. An MRI of his left shoulder showed AC joint degenerative change mild to moderately indenting the supraspinatus muscle with anterior downsloping of the acromion reducing the subacromial space to 5mm. Although there was no evidence of a rotator cuff tear, there was focally increased proton signal in the distal supraspinatus tendon most likely representing tendinosis. AR 425.

On September 25, 2002, Plaintiff told Dr. Perdikis that he was feeling frustrated and clumsy, especially with the usage of his left[3] upper extremity. Dr. Perdikis reviewed the results of Plaintiff's recent imaging studies and believed that they were consistent with Plaintiff's complaints of cervical and left shoulder pain, and radiation into the right upper extremity. AR 410. He also opined that the MRI demonstrated probable right C6 nerve root impingement. AR 410. Dr. Perdikis recommended that Plaintiff be careful with his overall movements and

---

[3] There are numerous instances in Dr. Perdikis' notes where he indicates that Plaintiff's complaints involve his right shoulder. From the other medical evidence and Plaintiff's testimony, however, it appears that his complaints involve his left shoulder, and the Court's summary of medical evidence has been altered accordingly.

recommended that he be fitted with a cervical collar and receive left shoulder/AC injections. If these measures do not work, Dr. Perdikis indicated that Plaintiff should be referred to an orthopedic specialist for his shoulder and a neurosurgeon for his disc problem. AR 410.

Dr. Perdikis described Plaintiff's mental status as stable on October 25, 2002, and indicated that his neurological exam was stable. His subjective pain was 4-8/10 and he complained of tremors. The Axert has helped his headaches. Dr. Perdikis requested approval for either a cervical collar or left shoulder/AC joint injections. AR 408.

On October 31, 2002, Dr. Perdikis opined that Plaintiff was unemployable for full time work and that he would remain so until approximately December 31, 2003. AR 421.

Dr. Perdikis completed a Physical Capacities assessment form on November 2, 2002. He opined that Plaintiff could stand/walk for 2-4 hours at one time and 2-4 hours total in an eight-hour day, and could sit for 0-2 hours at a time and 0-2 hours total in an eight-hour day. Plaintiff was restricted in using his hands/fingers for repetitive work because of bilateral carpal tunnel syndrome and could not use his feet for repetitive movement for more than two hours daily. He could not tolerate heat over 100 degrees. Plaintiff could occasionally lift and carry 20-30 pounds, 10-15 pounds frequently. He could occasionally climb, balance, stoop, kneel and reach below his knees. He could never crouch, crawl or reach above his waist. AR 418-419.

On November 22, 2002, Plaintiff returned to Dr. Perdikis and indicated that his overall pain level was 5-6/10, but that he medications worked well for his migraines, spasms and pain. AR 406.

On December 27, 2002, Plaintiff told Dr. Perdikis that he continued to have residual left shoulder pain, but that the December 7, 2002, left shoulder/AC joint injection was helpful. AR 403, 404. He also indicated that pain medications were helpful in providing relief, but that walking, lifting and making quick motions made the pain worse. He reported that his neck was "popping a lot lately." AR 403.

On January 24, 2003, Plaintiff returned to Dr. Perdikis and reported that his low back pain was worse than his cervical pain. Plaintiff stated that he was able to work approximately three hours per day, and then he feels "wiped out" because he cannot tolerate the pain. AR 400.

In a February 14, 2003, letter, Daniel H. Mallory, O.D., indicated that Plaintiff was completely blind in his left eye due to complicated glaucoma. He had normal vision in his right eye with spectacle correction to 20/20. Dr. Mallory opined that his condition would impair his ability to perform tasks requiring stereo acuity at near, but believed that he was visually able to drive and perform employment. AR 369.

On February 21, 2003, Plaintiff saw Dr. Perdikis and reported that his migraines had decreased significantly, both in frequency and intensity, and that overall, he felt much better. Dr. Perdikis indicated that Plaintiff had "obtained very good pain relief with a combination of Ultracet, Celebrex and Zanaflex in the standard dosages." Dr. Perdikis believed that Plaintiff was making good progress. AR 399.

In March 2003, State Agency physician Anne M. Khong, M.D., completed a Physical Residual Functional Capacity Assessment form. She opined that Plaintiff could lift and carry 20 pounds occasionally, 10 pounds frequently, could stand and/or walk about six hours in an eight-hour day, and could sit for about six hours in an eight-hour day. Plaintiff could not perform frequent overhead reaching due to his neck discomfort and could not perform frequent above-shoulder reaching bilaterally. AR 374-381. These findings were affirmed in December 2003. AR 374.

On March 19, 2003, Plaintiff reported that he had been having about four cervically-induced migraine headaches per month, but had obtained good relief for his spasms from medication. AR 398.

During his appointment with Dr. Perdikis on May 14, 2003, Plaintiff reported that he was satisfied with his present therapeutic regimen, but that he continued to have pain, fatigue and trouble sleeping. AR 396.

On June 18, 2003, Plaintiff returned to Dr. Perdikis and reported a persistent pain level of 5-7/10, but he had no new neurological or pain complaints. He refilled Plaintiff's pain medications and indicated that "this regimen has worked quite satisfactorily for this patient so far." AR 394.

On July 16, 2003, Dr. Perdikis reported that Plaintiff had no new neurologic or pain complaints, but was unable to raise his left upper extremity above 30 degrees. He continued to experience moderate left shoulder pain and right hip pain with radiation into the right lower extremity. Plaintiff reported that his pain was alleviated somewhat by rest, applying heat, rubbing and medication, but was exacerbated by lifting his left arm, sitting too long or walking more than a block. AR 392. Dr. Perdikis believed that Plaintiff could benefit from occupational therapy/physical therapy 2-3 times a week for the next four weeks, and requested approval for such treatment. AR 392.

On August 13, 2003, Dr. Perdikis examined Plaintiff and reported that he was in stable spirits but continued to complain of chronic left shoulder and right hip pain with release into the right lower extremity. Ultracet provided very good pain relief and Zanaflex provided good relief of his muscle spasms. Plaintiff reported significant residual pain, though. AR 391.

Plaintiff returned to Dr. Perdikis on September 9, 2003. Dr. Perdikis noted that Plaintiff was in good and stable spirits. Plaintiff had to discontinue Celebrex because it increased his pain, but reported that Lidoderm patches "really helped." AR 389.

On October 11, 2003, Dr. Perdikis indicated that Plaintiff continued to complain of left shoulder pain with radiation into the left upper extremity and rated the pain as a 5-7/10. Although physical therapy provided good relief for his shoulder, it made his low back pain worse. Dr. Perdikis recommended follow-up imaging studies at the completion of his physical therapy. AR 387.

Plaintiff underwent an MRI of his left shoulder on October 24, 2003. The test revealed mild supraspinatus tendinosis and peritendinous inflammation without a definite rotator cuff rupture or retraction, and mild to moderate AC joint degenerative and hypertrophic changes. AR 402.

Dr. Mallory completed an assessment dated November 26, 2003, and indicated that Plaintiff was blind in his left eye but that vision in his right eye was correctable to 20/20. AR 427.

On December 26, 2003, Plaintiff complained of left shoulder pain with radiation to his hand, cervical pain and low back pain with radiation down his right leg. AR 446. Plaintiff reported that medication was helping to relieve the nerve pain in his left arm. Dr. Perdikis refilled his medications and requested authorization for an orthopedic evaluation of his left shoulder based on the results of the October 2003 MRI. AR 446.

On January 23, 2004, Plaintiff reported that his left shoulder was "more sore" and Dr. Perdikis repeated his request for an orthopedic evaluation. AR 445.

Plaintiff returned to Dr. Perdikis on February 20, 2004. He was in stable spirits and reported shoulder and right lower extremity pain and exacerbation. AR 443.

On May 26, 2004, Plaintiff reported that he had good pain relief overall but could not elevate his left arm because of pain and spasms. AR 440.

Plaintiff had no new complaints on June 16, 2004. AR 439.

On June 18, 2004, Plaintiff saw Bruce L. Fishman, M.D., for an orthopedic consultation. Plaintiff reported a work-related injury to his left shoulder in September 1997 and that he last worked in September 2003. Plaintiff reported that his left shoulder pain is exacerbated by lifting, reaching overhead and reaching behind his back, and that he has numbness/tingling in his left upper extremity. On examination, pain was elicited to palpation over the left shoulder AC joint and over the biceps tendon. There was no swelling, atrophy, asymmetry, ecchymosis or spasm. Range of motion and grip strength were more limited in the left upper extremity than the right. Motor strength was 5/5 bilaterally, deep tendon reflexes were 2+ and sensation was normal in all upper extremity dermatomes. Based on his examination and review of the October 2003 MRI, Dr. Fishman diagnosed impingement syndrome of the left shoulder, symptomatic AC joint synovitis/arthritis in the left shoulder, and degenerative joint disease of the AC joint in the left shoulder. He believed that Plaintiff was temporarily partially disabled, with a disability precluding overhead use of his left upper extremity. Dr. Fishman recommended that Plaintiff undergo a series of steroidal injections, take non-steroidal anti-inflammatory medication and continue his home exercise program. If these treatments did not work, Dr. Fishman recommended that surgery be considered. AR 449-454.

On July 14, 2004 and August 18, 2004, Dr. Perdikis stated that Plaintiff had good pain relief with the present regimen. AR 436, 438.

On September 17, 2004, Dr. Perdikis found hyperesthesia (increased sensitivity to touch) of the left fourth and fifth digits. He diagnosed shoulder and cervical pain as well as depression. AR 435.

On October 15, 2004, Dr. Perdikis indicated that Plaintiff was responding well to his medications and had no side effects. Plaintiff reported feeling better and sleeping better. AR 437.

On October 20, 2004, Dr. Perdikis completed a Lumbar and Cervical Spine Residual Functional Capacity Questionnaire. Plaintiff has had monthly visits since July 28, 2002 and has been diagnosed with shoulder pain, cervical pain and depression. He also indicated that Plaintiff had numbness of the fourth and fifth digits on his left hand. Plaintiff was capable of a low stress job. Dr. Perdikis opined that Plaintiff could walk without rest for 1-2 blocks, sit for 15-20 minutes at one time, and stand for 15-20 minutes at a time. During an eight hour day, he could sit for about two hours and stand/walk for about 2 hours. He believed that Plaintiff would need 10-15 minute breaks every one to two hours. Plaintiff could rarely lift less than 10 pounds, and never more than 50. For gross and fine manipulation, including reaching overhead, he could use his right upper extremity for 75 percent of the day, and his left upper extremity for 20 percent of the day. He could rarely twist, stoop, crouch, or climb ladders or stairs. Plaintiff would be absent from work more than four days per month as a result of his impairments or treatments. AR 429-434.

ALJ's Findings

Prior to addressing the merits of Plaintiff's claim, the ALJ explained that Plaintiff filed a previous application for benefits in 1998. The application was denied at the hearing level on April 29, 1999. AR 23. The ALJ could not apply Chavez v. Bowen, however, because parts of the decision were missing and the specific limitations could not be determined. AR 23-24.

Based on his review of the medical evidence, the ALJ determined that Plaintiff's neck pain, mild supraspinatus tendinosis and peritendinous, and mild to moderate AC joint

degenerative changes of the left shoulder were severe impairments. AR 31. The ALJ further determined that Plaintiff was not wholly credible. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with no overhead work with the left upper extremity. Given this RFC, Plaintiff could not perform his past work, but could perform a significant range of light work. The ALJ based her decision on the testimony of the VE and application of the Medical-Vocational Guidelines. AR 31-32.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (neck pain, mild supraspinatus tendinosis and peritendinous, and mild to moderate AC joint degenerative changes of the left shoulder ) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work; but (5) retains the RFC to perform a significant range of light work. AR 31-32.

Here, Plaintiff argues that (1) the ALJ'S RFC finding is not supported by substantial evidence; and (2) the ALJ failed to properly evaluate Plaintiff's credibility.

## DISCUSSION

A.  RFC Finding

Plaintiff contends that the ALJ failed to properly evaluate the evidence in finding that he could perform work. Specifically, Plaintiff argues that the ALJ improperly adopted the opinions of Dr. Fishman rather than those of his treating physician, Dr. Perdikis.

Plaintiff correctly argues that the medical opinion of a claimant's treating physician is entitled to "special weight." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988); *Valencia v. Heckler*, 751 F.2d 1082, 1088 (9th Cir. 1985). Reliance on the opinion of the treating physician is based not only on the fact that he is employed to cure but also on his greater opportunity to observe and know the patient as an individual. However, a treating physician's opinion is not conclusive as to a physical condition or the ultimate issue of disability. *Magallanes*, 881 F.2d at

751, and *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). An ALJ may reject a contradicted treating physician's opinion on the basis of clear findings that set out specific, legitimate, reasons for the rejection. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A statement by a physician indicating a claimant is "disabled" does not mean that the Secretary will concur, absent review of medical findings and other evidence. 20 C.F.R. 416.927(e).

Here, the ALJ rejected Dr. Perdikis' opinions of October 31, 2002, November 2, 2002, and October 20, 2004, in part because they were not supported by his progress notes or objective findings. AR 28. The ALJ stated that his notes were comprised of few objective findings and were instead based mainly on Plaintiff's subjective complaints. However, the ALJ's statements are in direct contrast with Dr. Perdikis' September 25, 2002, discussion of the September 17, 2002, diagnostic tests of Plaintiff's left shoulder and cervical spine. Dr. Perdikis specifically stated:

> An MRI scan of the left shoulder with and without contrast revealed degenerative changes of the AC joint, with mild to moderate indentation of the supraspinatous muscle, and anterior downsloping of the acromion reducing the subacromial space to 5 mm. While the study did not reveal any evidence of rotator cuff tear, there was increased proton signal change consistent with tendinosis. The MRI scan of the cervical spine was consistent with a 4 mm right paramedian C5-6 disk protrusion deforming the right cord with mild posterior element hypertrophy, and possible mild right cord compression and extension into the right neural foramen, resulting in probable right C6 nerve root impingement.
>
> These imaging results are consistent with the complaints of the patient, consisting of cervical and left shoulder pain and radiating into the right upper extremity (right-sided C6 radiculopathy.) AR 410.

Contrary to the ALJ's finding, Dr. Perdikis' findings were supported by objective findings that he specifically referred to in his treatment records. Defendant argues that there is no evidence of deterioration, yet this does not negate the fact that there was objective evidence to support Plaintiff's subjective complaints. This error, when combined with the length of time Dr. Perdikis treated Plaintiff and his status as a treating physician, renders the ALJ's rejection of his opinions improper.

This error is compounded by the ALJ's improper acceptance of Dr. Fishman's opinions. Dr. Fishman examined Plaintiff's shoulder and reviewed his October 2003 diagnostic tests, and concluded that Plaintiff could perform light work with no overhead reaching with the left upper

extremity. AR 449-454. Dr. Fishman did not, however, examine anything other than Plaintiff's shoulder and therefore did not render an opinion as to his other impairments, i.e, his back. In essence, then, the ALJ relied on an incomplete assessment *and* improperly denied the treating physician's opinion in concluding that Plaintiff was not disabled. These errors render his disability analysis unsupported.

The Court will discuss the remedy at the end of this decision.

B.  <u>Plaintiff's Subjective Complaints</u>

Plaintiff also argues that the ALJ failed to properly evaluate his subjective complaints because the decision does not reflect consideration or application of the factors set out in SSR 96-7p, and because the ALJ failed to adequately specify which allegations he found not credible.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). "The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

While the ALJ set forth numerous reasons for rejecting Plaintiff's testimony, at least some were in error based on the Court's finding above. For instance, one of the main reasons

provided by the ALJ was his belief that Plaintiff's subjective complaints were out of proportion to the medical evidence. As discussed above, though, there was objective evidence to support his complaints. The Court recognizes that a credibility analysis does not necessarily fail where one reason may have been in error, *Batson v. Barnhart*, 359 F.3D 1190, 1197 (9th Cir. 2004), but given the other problems with the ALJ's opinion, the ALJ's credibility analysis is somewhat flawed.

C.   Relief

The Court has concluded that the ALJ improperly rejected Dr. Perdikis' opinion in favor of Dr. Fishman's opinion, therefore resulting in an unsupported RFC and disability analysis.

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed."). The Court will discuss the remedy at the end of this opinion.

Here, no useful purpose would be served by further administrative proceedings. If Dr. Perdikis' opinions are accepted, Plaintiff is unable to perform even sedentary work and would be found disabled. No additional evidence is necessary and therefore further proceedings would serve no purpose.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED for payment of benefits to Plaintiff. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Roger Brewer and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **June 28, 2007**         /s/ **Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE